Mr. Clement, you may proceed.  Governor, may it please the court, Paul Clement for the appellate. The government advances a view of Section 666 that is virtually limitless and wholly out of step with recent Supreme Court decisions constraining overbroad prosecutorial theories and restoring federalism. Under the government's view, if only they had prosecuted Governor McDonald under Section 666, they would not have needed to show an official act or any quid pro quo. A gratuity would suffice and Governor McDonald would have gone to prison. Moreover, if the government is correct, then all the First Amendment and federalism problems that the Supreme Court identified and avoided in McDonald will resurface because no citizen interacting with state and local officials can know in advance whether he'll be prosecuted under the limited statutes at issue in McDonald or under the government's boundless theory of Section 666. So you seek us to hold that 666 is unconstitutional because it has no quo? Well, I don't think that's quite what we're asking for, Your Honor. What are you asking for? Well, I think what we're asking for is to join the First Circuit in recognizing as a matter of statutory interpretation to avoid that constitutional problem that Section 666 doesn't reach gratuities and requires a quid pro quo. And I would go further and say logically the quo should have to be an official act and that you could infer that for all the same reasons that the Supreme Court has inferred an official act requirement in Section 1346, which doesn't have it textually, or the Hobbs Act 18 U.S.C. 1951 that doesn't say the words official act. But the Supreme Court time and time again has said in these public corruption contexts that you need a quid pro quo and the quo has to be an official act as defined in the McDonald case. Where do you believe the circuit split is? There already is a circuit split, but which ones do you think actually dealt with it on the other side and which ones do you think leave it? How many do line up against the First Circuit under your interpretation? Yeah, so I think there are some cases that line up against the First Circuit on the issue of whether a gratuity is covered. I think the First Circuit is largely joined by the Fourth Circuit. They recently had this Lindbergh case where they elaborated on the reasoning of Jennings and I think it's probably technically dictum, but it's authoritative dictum in the sense it's a whole footnote basically saying . . . But are you against the Seventh and the Sixth and the Second? Are all those squarely joined against or did they not really grapple with this? I think, you know, I don't know exactly how it characterized every single one of them. I think a lot of them are a little bit sort of, you know, kind of dealing with slightly different issues and didn't sort of squarely tee this up. And I don't know that I've seen a case that specifically says we've looked at the First Circuit's decision in Bravo-Fernandez and we just authoritatively disagree. I think some of them predated that, which is, I think, the most thorough examination. So would we be creating a circuit split in our circuit if we were to not go with First Circuit? I think it's probably fair to say that there's a circuit split out there. So it's just a matter of which side you join. I think that if you were to join the First Circuit, you know, that you could sort of take the view that it's not really a mature circuit split on the other side because most of those cases haven't taken into account every single one of the Supreme Court's recent cases the way that Bravo-Fernandez did. But I do think, just to be candid, I think there is a circuit split, and so it's just a matter of kind of picking a side. We think, overwhelmingly, the First Circuit is the better side to pick as a matter of text, constitutional avoidance, and all of the rest, and frankly, common sense. Let me not stop you there but pick up there. You said it on the basis of text. Good lawyering looks at texts in different ways, and the way you have looked at it in the First Circuit is very much also statutory history, not legislative history, but statutory history. Where did 666 come from? Where did some of the other statutory language come from? I don't know if that's the way we would usually look at text, and to me, looking at 666 on its face, your argument isn't particularly compelling, and you really do need to add all the rest that you are bringing to this, including McDonnell, and how that just would affect that interpretation. But it does seem to me that the circuits that are against you are fairly straightforward interpretation of the text without adding all the extras that you want us to be considering. Do you accept that as a characterization, and if so, why are you the — why is your approach the right one? So Judge Southwick, I mean, I understand the characterization. I don't think it's completely unfair, but I do think we have the better reading of the in this context does require a quid pro quo, and so — and I think, then, in that context, the word reward is readily explained as just making irrelevant sort of the timing of the payment. Common sensical, what you say about where reward fits into this, but corruptly — you're putting a lot of weight on the word corruptly. What's your best authority? I don't mean best case, but aren't you reading it a little more restrictively than it necessarily has been read? I don't — It needs to be. No, I think my reading is consistent with both this Court's Richard decision in the context of sentencing, but I think probably, arguably even more persuasively, in Justice Scalia's opinion in Sundiamond. I think when he's looking at the two subsections of 201, he really sees the critical difference between the two is the word corruptly in 201B, and he, I think, basically says corruptly in that context requires quid pro quo, and that's why I do think, then, if you get beyond just the pure snapshot of the existing text, and then you sort of rewind and realize that Congress, after that two-year interregnum, sort of borrowed the word corruptly directly from 201B and put that into Section 666, and the word corruptly obviously doesn't appear in 201C, the federal gratuity provision. I think that's where we start to have a better argument on the text. And then I do think the context of this is important because it really would be, again, to paraphrase Justice Scalia, again, a judgment worthy of the Mad Hatter, to say that we're going to punish a gratuity to every state and local official and recipient of federal benefits in the country at five times the punishment of a gratuity to a federal public official up to including the Secretary of Defense. Just doesn't, to me, make any sense. And if you look at the— Let me ask you about that, just on the timing in Congress. Congress does a lot of things at different times and doesn't necessarily reflect on all that it's done before. That sentencing structure, the cap on one, the cap on the other, they weren't settled at the same time were they passed by Congress at the same time. So— When does one statute precede the other, and whatever decision was made at that time about the proper sentence, different Congress later may have a different view. Oh, sure. But 201 is sitting there. And first, predates 666. It's sitting there. It's got a quid pro quo bribery prohibition and a gratuity prohibition. It's got a 15-year maximum for the quid pro quo bribery prohibition and a two-year maximum for the gratuity provision. Then Congress sort of borrows some of that language and says, here's the 666 prohibition, and we're going to put a 10-year sentence on it. And they did that from the get-go, and then two years later, they fixed it and added the word corruptly. Now, I would just submit that, like, there's two possible ways to read what happened there. One is they said, well, we're going to prohibit bribery at the local and state level and private organization level if they're receiving federal benefits, but that's not quite as serious as bribing the Secretary of Defense, so instead of 15 years, we'll put 10 years. Or you could say— Go back and fix the two-year. If they really did think the 10 versus 2 was not the right proportion, it would have taken an extra step to also amend the sentencing on the statute of perpetuities. Sure. And they never did that, and so— The only thing is that maybe it was for another time. I'm just not sure how much to read into it when it's not in the same legislation. If it had been in the same legislation, your argument's a little easier to accept. Yeah, and— If you're reading a rationality into congressional action, like judicial action, too, which is not always rational, then I'm not sure I'm fully on board with. So, I guess what I would say is if that were my only argument, I think I'd be on the sort of thinner ice, but I view that as a complementary point based on taking the corruptly language right from 201B, but then all of this has to be infused with, I think, everything the Supreme Court has said in not just McDonald, but this whole series of cases that suggests that this is an area that's kind of fraught with constitutional difficulty. And with respect, I mean, if there's one statute that I would point to as the one that is most in need of a narrowing construction, it would be 666, because 666 extends to a whole raft of state and local officials. And we haven't talked about the McCormick issue yet, but I can just allude to that quickly, because the federal statute, and particularly the federal gratuity statute, I mean, it affects principally federal officials, federal government officials, most of whom are appointed. Not some of them are elected, but most of the officials covered by 201 are appointed. 666, by contrast, covers this whole raft of state and local and even tribal officials who are elected. And if you say a gratuity is covered with respect to elected officials, boy, I think every campaign contribution that's ever been given to an incumbent in the history of the world has been a reward for some past action. So... Judge Elrod and I have run for office, and that would not be the case for us. Well, I don't know if she can speak for every one of her donors. You know, the donees may have had the purest intent in the world, but the donors, I think they are giving a campaign contribution as a reward for past action and the hope of future action. And of course, the point isn't that you can't violate 666 or 1346 or the Hobbs Act with campaign contribution, but you're entitled to a McCormick instruction to make sure that you have a very explicit or express quid pro quo. And in this case, we got the opposite of a McCormick instruction. The jury was literally told that the quid pro quo doesn't need to be expressed or explicit. That seems... OK, on official, you know, official act is not there. And so if you just do a real basic surface text thing, you say, well, it's not there, so your reading loses. I mean, that that's one way to approach this. And so if that were the way to approach this, are you also you talk about separation of powers in your narrowing construction? And I note that in our Lipscomb case from some long time ago, there was a dissent slash concurrence since they argue whether it's really a dissent or not. That says that 666 is totally unconstitutional because of the spending, et cetera. So are you making a straight up separation of powers unconstitutionality argument in this case? Obviously, sophisticated counsel, sophisticated clients, sophisticated opposing counsel. Is this here or is this not here? We already have this teed up in our circuit. You know, look, I'd certainly be willing to tell you it's a separation of powers violation if you don't construe it the way we want you to. That really, in fairness, is not how we've briefed it. OK, so that's not, we shouldn't go there. Well, I would go there if you think that you're otherwise going to uphold the conviction and then you'd say it's a plain error. But I'm happy to sort of make the argument. But I suppose in fairness to the way that we have briefed this, I mean, you know, if the world were governed by the dissenting opinions or the concurring opinions of, say, Justice Scalia and Skilling, then we'd be making a straight up constitutional argument. We'd say, oh, you know, the text is the text and you can't mess with the text. And the text is unconstitutionally vague or there's a separation of powers problem. But the history of the Supreme Court in this context is time and time again, while a couple of justices said the whole thing's unconstitutional as applied, the majority has sort of, you know, as Justice Scalia would say, been Mr. Fix-It. And they've massaged the statutory text. And one thing I want to convey here is that if the standard is sort of Skilling or the standard is the Hobbs Act, it is no more difficult to read in an official act requirement into Section 666 than those statutes. In fact, all of those statutes, all three statutes have one thing in common, which is all three statutes by their terms apply to both private sector individuals and public sector individuals. That's also true of the Wire Act and Section 6, Wire Fraud rather, and Section 1646 with the extension to Honest Services Fraud. It's true of the Hobbs Act. All of them apply to both private and public sector. And in the public sector context, the Supreme Court has essentially inferred an official act requirement into all of those statutes in order to avoid First Amendment and federalism context problems. And just to underscore why that's so important, it would be so anomalous to not do that with Section 666, is that like all of these cases we're talking about could have been prosecuted under Section 666. But is that, and we're going to, each side is going to have five more minutes because we haven't even gotten to entrapment yet, and we need, so each side will have five more minutes. But we have said that Westmoreland, in our circuit, we give a really broad interpret, and I know it's in a different context. Our circuit, though, has specifically said that the statute, we're not going to narrow it, we're going to apply it really broadly. And so does that cause us attention with the Supreme Court's actions and other, you know, does that, you don't think that impacts us here? I don't think it impacts you here. I mean, I, you know. Because it was a different broadening. Different broadening, you know, I'll express some sympathy with the dissent in that case, but, you know, that said, I don't think it limits you here and prevents you from essentially construing this particular statute on these particular arguments to both require an official act or not extend to a gratuity. To be clear, if the court does either of those two things, then I think that there would need to be a new trial. So it's, and I actually think the court should do both because I think doing both is what would be necessary to really put the statute in line with the other statutes that could have equally been deployed in all of these cases. If you were to prevail, and this is not foreshadowing, on the entrapment point that the very learned trial judge herself said, this is probably error, but I'm gonna do what they say. What hap, that's just one count. Is that, what happens then? We send it back for resentencing if you don't win on this big argument at the beginning? What's? If all you ruled in our favor was on the entrapment count, then it would need to go back and for at least resentencing, and then there'd be a question of whether there was a need for a new trial. But I do think, I mean, I think there's sort of two paths for us to win across the board. One is the official actor gratuity argument about 666. There's an alternative path where we'd be entitled to the entrapment instruction on count three with respect to, yeah, I think it's count three with respect to Carraway. And then we should have been offered the McCormick instruction as to counts one and two with respect to Davis, because those are where among the quids were the campaign contributions. So I think the one way to resolve this case, it wouldn't be our preferred course, but obviously what we want is a new trial. But one way to resolve this case would be to simply reverse on the basis of the two instructional errors, the McCormick issue where the court was quite clear that she didn't think that McCormick applied section 666, which even if you disagree with this unofficial act or section 666 in the gratuity, the question of whether you need a McCormick instruction when the 666 prosecution is based on a campaign contribution is really independent of that. I mean, you could assume arguendo that the statute covers a gratuity, doesn't require an official act, and you could still hold, but there still needs to be a McCormick instruction, at least where among the quids are campaign contributions. And this is all properly preserved across the board, all these instructional challenges. I certainly believe so. Now, the government in their brief has made some arguments that the McCormick error, they say, well, we preserved only half of it. We preserved our objection to there not being a McCormick instruction, but we didn't fully preserve our objection to the sort of anti-McCormick instruction was in fact given. I don't think that's a fair reading of the record. I also think it's telling that they didn't raise these kind of failure to preserve issues below in the post-trial briefing, because I rather emphatically believe if they'd raised the failure to raise issues below that Judge Lynn would have said, are you kidding? And the one thing we don't have a problem here with defense counsel is that they haven't preserved things. If we have a problem is they keep raising the same issue over and over again, and I'm sick of it. So I really don't think it's fair for the government to raise these sort of forfeiture objections for the first time on appeal. And I would respectfully submit if there were a forfeiture problem, the forfeiture problem has itself been forfeited. But I don't think there was a forfeiture problem. I think all of this was pretty elaborately preserved below. What about the dying declaration of the person and all of that? Is that really, are you urging that strongly today? Well, I'll urge it strongly, of course. I don't think it's our strongest argument to be candid with you, but I think we're right. And I think part of the unfairness of this case is that when the government's star witness died, they managed to sort of essentially get only the inculpatory half of her testimony before the jury by have a superseding indictment and adding this conspiracy count. And it strikes me as at least fundamentally unfair, but I also think if you actually go into the two steps of how they got the sort of inculpatory half in and excluded the exculpatory half, I think both parts of that were error. If we agree, was it harmless? I don't see how it could possibly be harmless. I mean, the government, again, argues that, but how the fact that in a bribery case, the fact that the sort of bribee says that there was no bribe and he never asked for anything from me, how that could be harmless error, I just don't know. And what result if that were the case? If we agreed with you on that point, what happens in this case? If you don't win on anything else, then what happens? Well, I think you'd have to essentially have a new trial on counts one and two. One and two. And then there'd have to be a complete resentencing because the huge sentence in this case was driven largely by the sort of amount of the perceived benefits that would be derived from counts one and two, not count three. So if all that survived is count three, the loss amount goes down from like $3 million to $7,000. Which would create a radically different sentence. Let's see, my time has expired. Thank you. Mr. Gilstrap. Thank you, Judge Elrod. May it please the court. Stephen Gilstrap on behalf of the United States. I'll pick up with the main issue that we started with, which was what is the scope of section 666? And I'll address all the arguments that Mr. Clement addressed related to the scope of the statute, the reward language, the corruptly language and everything like that. But I think it's important to take a step back from that language because I don't think this court actually needs to deal with whether 666 covers just quid pro quo bribery or a corrupt gratuity because when you look at the jury instructions here, it's clear that the court actually did instruct the jury on quid pro quo bribery under this court's decision in Whitfield and Tomlin. And there are two things that I think are important to kind of suss out this distinction between a bribe and a gratuity. The first is courts have divided between those two things on two different bases. The first is one that Mr. Clement mentioned, the corruptly language. And this comes from the First Circuit's decision in Fernandez that because the statute uses the term corruptly, they very narrowly limit the reward language in the statute to say it just covers bribes. Well, the jury was instructed that there had to be a corrupt intent here and that there had to be a corrupt agreement here. So by tracking the statutory language, Judge Lynn gave them an instruction on corruptly, which she was required to do under 666, which also brings up a point where we're not just talking about mere gratuities here to the extent this court holds it 666 covers gratuities. We're talking about corrupt gratuities. 201C, which is the federal gratuity statute, has no corruptly requirement. So you're saying the word corrupt incorporates a quote? That's what Mr. Clement just argued, and that is what some cases like Fernandez have said, that the term corruptly in this court's Whitfield decision suggests the same thing there because. But you're saying that it has what quote, that it's already baked in, that there is a quo here. What is the quo in this evidentiary record? Well, as to Davis, the quo is her votes and support for the Royal Crest Project. For Carraway, the quo is that he's helping put an item on the city council agenda and for future specific opportunities in developing 11th Street as they arise. In 666, we were talking about the Hobbs Act and honest services fraud. 666 specifies in its text what it's, to the extent that it's limited to quid pro quo bribery, it specifies what the quo is. It's not like the Hobbs Act or the honest services statute that doesn't. It says that something has to be corruptly given or agreed with the intent to influence or reward an agent in connection with any business, transaction, or series of transactions of that organization with a value of at least $5,000. So 666, getting to the official act point a little bit, deals with, it doesn't have official act language, it has a different language. And it says that it has to be the business, transaction, or series of transactions, and it has to be valued at at least $5,000. Also, it seems to me, if the jury were supposed to understand all of that, basically mooting the point about the defense here, they would have been confused, at least, when the district court apparently told them, you tell me exactly what was done, I'm sure, that neither a quid pro quo, and I don't know if she then described what that meant, that neither a quid pro quo exchange nor any official act was required. So telling them that there had to be something for the gratuity through the word corruptly and through the jury instruction, after also telling them this, is not much of a substitute. Well, in response to that, so getting back to where I was going, and I'll answer your question in doing this, Judge Southwick, some courts have said the corruptly, I do, I believe, Your Honor, the corruptly language connotes a quid pro quo bribe. Some courts, the Fernandez Court in the First Circuit has said that, and that's why it said that the statute didn't cover gratuities. The other way that courts have kind of sliced the line between bribes and gratuities is the timing issue. With the general rule that a bribe is given before action is taken, a gratuity comes after the fact. I'm sorry, I don't understand how that answers Judge Southwick's really helpful question. I will work with him on this, keep going. Sure, and I'll get, I'll actually, so, I wanna get the exact language right because the court never said there doesn't need to be a quid pro quo. That's not in the jury instruction. The jury was not told anything like that by the judge, you're telling me? No, not to my knowledge of the record. What were they told that seems to suggest that? Exactly, and this is on page 1945, which is the jury charge. The court said, with regard to the third element of bribery, which is what we're talking about, the intent to influence or reward language, the government needs to prove, and I quote, that the defendant entered into a corrupt agreement to provide things of value with the intent to influence or reward the person for whom the influence or reward was intended on any question or matter which may be then or would thereafter be pending before that person. So that instruction says there has to be a corrupt agreement which suggests an agreement, a meeting of the minds about something, and that the action to be taken on the question or matter, the question or matter was then or would thereafter be pending. So that instruction conveys both a corrupt agreement and it also conveys that the question or matter is either in front of the official or it is coming in the future, which contradicts this notion that it's some payment for a past action. Under that instruction, the action hadn't been taken yet. And the court goes on to say that when it's describing, you know, it says it doesn't need to be an official act, but it says it's sufficient if the thing of value is given with the intent that the agent of the local government will exercise particular kinds of influence as specific opportunities arise. That instruction is in line. Are you saying that in effect, what your friend on the other side is urging, that it can't simply be a gratuity, it must be a gratuity that we're seeking either to reward or to urge some official act, that that in its entirety was given, in other words, or almost all, and if it's either one of those, answer and tell me if it's not all, what less than that do you accept was not actually told the jury? I believe as to the quid pro quo issue, that yes, the instructions conveyed the idea of a quid pro quo. The whole idea of quid pro quo, you're telling us, it's your view from what you read to us, the jury would have been told. I think under this court's decision in Whitefield and in Tomlin, that the corrupt agreement and the language that I just read conveys the idea of a quid pro quo. But you're not really asserting that official act point. The court's instruction said that official act is not needed, and I think what's going on here is... You talked about some matter or whatever, I thought you were telling us that was equivalent, which it didn't sound to me that just referring to it in exchange for some matter would refer to an official act. Sure, it's not referring to an official act, but it is referring to a quo. It's just that the quo in 666 is not necessarily an official act, and this is on the official act point. Mr. Hamilton is standing... That gets back to the whole concern about elected officials, whether it's tribal officials up to federal officials, state officials. There's so much that just a fair hearing or be thought well of or something far less than anywhere near an official act could be some matter that you want friendly consideration. A friendly addressing of. Two points on that, Your Honor, and to address one of Judge Elrod's questions earlier about a circuit split. This court would be creating a circuit split if it held that 666 covers only official acts. The Second Circuit, the Sixth Circuit, the Eleventh Circuit most recently, the Fourth Circuit has held that no, 666 is not limited to official acts, and although this court hasn't dealt with it in a published opinion, this court's decision in Winfield, which is cited in our brief, clearly says that McDonald's overlay of 666 doesn't, or sorry, overlay of official act doesn't apply to 666. And so... Go ahead, finish your split sentence. Sorry, I was just saying this court would be creating a circuit split on the official act point if it went with Mr. Hamilton. Okay, if we read the record at 2180 and 81, and we believe that what happens is that the district court told the jury that neither a quid pro quo nor any official act were required, and we read the record that way, that's against what you've been arguing here today at pages 2180 to 81, over the objection of the side that the district court actually told the jury, at least in a way that a jury would be confused on whether you needed a quid pro quo and official act, how do you win? So I believe Judge Lynn's statement in the post-trial order, which I believe is what Your Honor is referring to, is talking about, yes, the court used the reward language, which was the objection that was made below. Mr. Hamilton essentially asked that the court excise the reward language from the statute, and what Judge Lynn is saying there is I kept the reward language in, A, because this court hasn't specified whether reward means gratuities or whether it's something different in the statute. I tracked the statutory language, and to the extent just tracking the statutory language introduces the idea of a corrupt gratuity as opposed to quid pro quo bribery, then that's the situation here. The court's post-trial order doesn't address the additional language that I quoted in my colloquy with Judge Southwick about the corrupt agreement and the questioner matter that was then or thereafter pending. And so I think what Judge Lynn did here is recognize that there is some uncertainty based on the circuit split with the First Circuit compared to the Sixth and Seventh and Eleventh Circuits, among others, that whether 666 covers a corrupt gratuity is a little unclear. So what she did was she tracked the statutory language, which the Abbey Court in the Sixth Circuit said that's a very reasonable approach and good thing to do. And then, in fact, based on the language that I quoted, in some ways very much cabined some of the concerns that Mr. Hamilton is raising. And one other point that I think is really critical on this is in the Fernandez case, which is the main case from the First Circuit that Mr. Clement relies on. The court in that case didn't say, oh, you tracked the reward language, so there's error and we have to send it back. The court actually said it had no problem with the court tracking the statutory language. In Fernandez, there were two instructions that made clear that the corrupt agreement  That was the error in Fernandez. And here, based on the language in the jury charge, the may then or thereafter be pending suggests the exact opposite. So what I submit to you is that if these jury instructions were before the First Circuit in Fernandez, and Fernandez, the court in that case, narrowed 666 to only cover quid pro quo bribes, I believe that that court and this court, based on its Whitfield decision, Tomlin decision, Skrug decision, would find that these instructions are sufficient and that there is no error. So you'd be happy for us to interpret the statute the way the defense argues, but just say it was satisfied in this case? My point is I don't think the court needs to in order to affirm. The government still believes that the better reading of the statute is that the reward language  needs to delve into that in order to affirm and answer this question. I wouldn't expect you to say otherwise, but you are representing the Department of Justice. Department of Justice wins when justice is done, or whatever it says there, which is it on the building in Washington. It does seem to me that the very serious concerns about this statute have been raised, similar to McDonnell, and similar perhaps to Sundyman. What is the position that you're taking on behalf of the government? Are those problems really not in this statute if you don't read in quid pro quo language? Or those problems don't matter? There's not some sort of constitutional principle here without getting too carried away with it that we're gonna declare it unconstitutional. There's not some obligation to create a limiting principle not to use whatever the alternative to scalpel is, but to use a scalpel and make this narrow. Is there no sense from the government's viewpoint that you're representing that something like that is important in this statute? I believe, and the government's position is, that 666 is already sufficiently cabined in a way that doesn't present the constitutional issues that were raised in Sundyman or even McDonnell because of various requirements that don't exist in those other statutes. Yes, 666 was born out of 201, but it is a different statute with different language. And I think it's important to highlight some of the things that are in 666 that protect against those concerns in Sundyman and other cases. One, the corruptly requirement. Sundyman was about 201C, the gratuity provision in 201 that has no corruptly requirement. 666 has a jurisdictional threshold of $10,000 that it's not just to any locality or agency. They have to actually receive $10,000 in federal assistance in the given year. It has to be in connection with any business transaction or series of transactions with the organization. And that thing has to have a value of at least $5,000. So what I'm saying is it's awkward to overlay requirements from another statute onto 666 because it has things built into it that protect against the constitutional sort of concerns that have been raised. And I know Mr. Clement referenced the Lindbergh case that came out of the Fourth Circuit last week. The Fourth Circuit looked at all these issues like the Second Circuit did in the same case and said, when you look at these other protections that are in section 666, they don't raise the same type of constitutional concerns because of these additional requirements which protect against things like federalism or vagueness or overbreadth. My colleagues may want to stay with this a bit. I wish, and I'm certain they can bring it back to you, but I wish you would address entrapment. It does seem to me that that is a real issue in this case. Absolutely, Your Honor. I'll happily move to entrapment. And I know Judge Elrod mentioned something that the district court said there was a risk or something. The court wasn't concerned about giving an entrapment instruction. She was basically asking, well, I could give an entrapment instruction just out of an abundance of caution or not. And the government's response was,  for an entrapment instruction, so one shouldn't be given. I don't think she was saying like, well, I'm just gonna take the risk and you might be wrong. That's not my understanding of the record. The government took a risk. Well- The government took a risk because why wouldn't they have been entitled to that instruction? Because Hamilton did not fit this court's test, which is making a prima facie showing of a lack of predisposition and improper government inducement. On the first prong, and Mr. Hamilton has to show both, and just to clarify a point, this goes only to count three. Entrapment was only raised with regard to the Carraway count. But as to a lack of predisposition, this court has held in the Stevens case and in the Reyes case that when there's no hesitation on the part of the defendant, that doesn't show a lack of predisposition. Here, when you look at the call transcripts and the video and the transcript of the meeting the next day between a council member- They didn't immediately jump in. They waited. I submit to your honor that the way things happened was first and foremost, Hamilton reached out to Carraway. This isn't a situation like a lot of entrapment cases where the government agent is the one that starts the ball running. Carraway was, Hamilton reached out to Carraway and said, I'm calling to ask for a favor. The men met the next day. And the only time Carraway brought up the, hey, can you give me some money? The only time that was brought up was after Hamilton said, I don't know if you're running for reelection again, but I want you to know I'm in your corner and I'm there for you. And I'm there to provide any help that you need. That was the first time Carraway said I could use $6,500, I believe was the amount that he asked for. And then the two men talked about future developments on 11th Street and everything like that. And then Hamilton comes back and says, tell me, Duane, what can I do right now for you today? And then when he says, I put that thing out for $6,500, Hamilton doesn't hesitate. He said, well, there's only one thing we need, Duane. And Mr. Carraway says, what's that? He says, a pin. And he writes the check there on the spot. There's no sort of persistence. The government's not asking, or the government, Carraway's not asking over and over again, pressuring. There's nothing like that. I disagree with you. Do we remand for retrial on count three? Is that what you said? If you disagree that an entrapment instruction was not warranted, then yes, there would be a need for a remand on count three. It's like when the government, we have this whole series of cases like on the willful blindness instruction. We say that that shouldn't be given or the comparable thing. And we're always telling them not to ask for that except in appropriate cases. And they give it, and we say, oh, we're gonna, the government is taking a risk by choosing jury instructions that are more risky. Instead of choosing jury instruction, when if you think you got all the evidence, why are you taking this risk as the government? Well, I think what the government was doing here was it was looking at this court's cases and Stevens and Reyes and Theogene and others, comparing the facts of this case to those cases and saying, Hamilton hasn't met the two prongs that are necessary for an entrapment instruction. Okay, can we talk about the $10,000 and whether, since it doesn't say benefits? Sure, absolutely. This goes to the jurisdictional element. The government's position on this is that the stipulation, while it does not use the word benefits, and the briefing explains how that all came about, while it doesn't use the word benefits, it uses the term federal assistance because it otherwise tracks the language of the statute. And this court has held in Mar-a-Lago, the Second Circuit has held in Rooney that terms, benefits, federal assistance that are not defined in the statute mean the same thing. And- Can we talk about the exculpatory testimony or whether or not it is exculpatory? I think the person was exposing herself. She already had a deal. So you could say that that was against her penal interest. On the recantation statements, a few points on that. One, certain statements got in through Jeremy Scroggins that were exculpatory to Davis. There were some statements that she made where she says, Hamilton hadn't asked me for a darn thing and other things like that. So there was not this notion that the Scroggins related testimony was just inculpatory and not exculpatory. There was their mixed bag in Scroggins testimony. But going to your Honor's question on the recanting affidavit specifically, these did not expose her to additional criminal liability because they made two things clear. First, they're private statements that are being made to friends. They're not in public filings or anything like that. And secondly, in those statements, she makes two things clear. One, that she never lied or anything to federal prosecutors or agents. And she's not implicating herself. She's saying, Hamilton didn't necessarily bribe me or anything like that. But she's trying to pin it on Mr. Scroggins is what she's doing. And these are, that's the second prong of the relevant test. The third prong is, are these the type of statements that have various indicia of trustworthiness and everything like that? And the cases say, private statements made to friends, some of these, in this case, 25 or 30 years, that, if anything, are designed to rehabilitate her by saying, if Hamilton didn't bribe her, then she wasn't bribed by Hamilton. That's saying, oh, I just pled guilty because I was worried about my daughter and felt pressure. Those are things that you would say even if they weren't true. And this court's decision in Piper, I believe, makes clear that where there are these type of statements that you would make whether they were true or not, given these circumstances, the third prong's not met here. And I think the other point to make on this is, these purportedly recanting affidavits, they didn't come out till August and September of 2019 after Ms. Davis had died in a tragic car accident. These aren't, she had pled guilty, I believe, in February of 2019. These are the things that, if those had come in, the government wouldn't have been able to ask the sort of questions that you would expect on cross-examination of, why did you wait seven months to make these statements? Why did you plead guilty the first time? So they just don't have that indicia of reliability that this court's Piper decision says is necessary. I've got about a minute left. Going back to the $10,000, Judge Elrod, just to make another quick point on that, the government's position is the stipulation is enough because of the use of the term federal assistance, which this court has held is synonymous with benefits we look at the Plain Meeting as the Hildebrand case says, but there was testimony as well from Bernadette Mitchell of the Housing Authority that made clear that, on average, the city of Dallas received $30 million in HUD grants, she called them grants, which is another term in the statutory language, and in a year, and that the specific low-income housing tax credits that were at issue here, there were $3 million in federal grants from HUD to spend on those, so it's not just the stipulation on that point. Does the rule of lenity have any applicability here? I don't believe so, Your Honor. No court has ever applied the rule of lenity to 666 in this context, even the Fernandez case that Mr. Hamilton cites rejects it. I'm not aware of a court. Judge Howard's concurring in part said that it did. It was his concurring opinion. To my knowledge, he is the only judge on an appellate court that's considered this issue, and there are several that have considered the scope of 666 at this point, and he's the only judge, to my knowledge, to suggest that the rule of lenity would apply, and the government doesn't think that the court need to go there. There's no sort of grievous ambiguity here. It's either the statute covers corrupt gratuities for the reasons that one side of the ledger of court say, or it's limited to the narrow timing issue, but again, as the government's argued, if it's narrowed in that way, these jury instructions would still suffice, and the last point, I realize my time's expired, the last point I wanna make is, when you look at the things of value that were given here between Hamilton and Davis and Hamilton and Carraway, these are all bribes. There's no talk about gratuity in this case. The jury was instructed on bribes. The parties talked about bribes. Pre-trial, Hamilton had multiple filings where he said, this is a bribery case. The concept that the jury would have been confused about a gratuity just given the reward language, I don't think is borne out by the record. The jury was told they needed to find bribes and were given instructions about needing a corrupt agreement on an issue that was then or thereafter pending. Thank you. Philosophically, I'm just trying to figure out what happens if it was during the time that they could accept a campaign contribution and the person is going to their representative and they need help, their counselor, and they need help with some kind of problem they're having in life, and you say, and how can I help you? And it's legitimately in the time of their campaign and they're just, why isn't that a big First Amendment problem? Two points. I think if you look at these jury instructions with the corruptly language and with the corrupt agreement. Corrupt about saying, how can I help you? You've been available for me. I think you're good government because you take my calls and you help us. What makes it corrupt? Oh, that's what I'm saying. I'm saying in that context, I don't believe that it would satisfy 666. What I'm saying is the corrupt element of 666 protects against that, unlike 201C, which doesn't have a corrupt requirement, which is why in Sun Diamond, the Supreme Court is putting as much weight as it did on the official act language in that statute because it's not otherwise cabined by a corrupt requirement. And so I think that sort of situation where it's good governance or something vague like that, that's not covered by 666. The government's not suggesting that it would be. These votes, these votes themselves, how were they bad? Well, they were bad because the record on this case makes plain that Carolyn Davis made those votes because Hamilton bribed her, because there was a bribe, a quid pro quo, if you will, and the jury instructions in this case protected against that. I think the overarching point I'm trying to get across is even if there's some ambiguity about the scope of gratuities versus bribes in the statute, the jury instructions here actually protected against it. And when you look at the facts of this case, they are very far afield from some of the cases that grapple with these constitutional concerns. It's not something that she would have done anyway, perhaps? I don't- You thought that was the right answer to the question when it was called upon to make the vote? A few points about that, if I may, Your Honor, based on the record. And if they need extra two minutes on the other side. The housing, the Royal Crest housing project was not in Councilwoman Davis's district. And there was plenty of testimony at trial that from Bernadette Mitchell and others that made clear how odd it was for someone to be spearheading a low-income housing project that wasn't in their district and how much pressure Councilwoman Davis was putting on Bernadette Mitchell to push this through, even though it didn't fit the city's criteria. And so I think you have to look at the specific facts here because I think they help distinguish, A, that this case really was about bribes. I mean, the payments from Hamilton through hip hop government and otherwise started coming in late 2013. The vote wasn't taken until February of 2015. I mean, this is a long running scheme and corrupt agreement that the jury found that that corrupt agreement was formed before the thing was taken, the official act. And I mean, a vote is an official act. So that also protects against some of the concerns that Mr. Hamilton has about vagueness related to not imposing an official act in this context. The other thing is- I think you've answered my question. Okay, thank you, Judge Elrod. I appreciate your indulgence for the extra time. And for those reasons, the government would ask that this court affirm. Mr. Clement, you save time for rebuttal. Thank you, Your Honors. Just a couple of points of rebuttal. I wanna start though with the government's proposition that even if we're right about all the legal issues, these instructions were sufficient. I think that's a remarkable argument, both at a global level and at a granular level. So let me start with the global level. I mean, what the government is effectively telling you is on an issue where there's a circuit split and where their current position is that the word corruptly in section 666 does not mean there has to be a quid pro quo. Nonetheless, if they're wrong about that, or if you just ignore that issue, the jury simply by giving the statutory language in the word corruptly would have known they needed to find a quid pro quo and not a mere gratuity. I find that argument absolutely baffling. They can't have it both ways. They can't say the word corruptly is insufficient to require a quid pro quo. But if we're wrong about that, the jury would have understood that the First Circuit is right and all of this problem goes away. So that's the global problem. The granular problem, if anything, is worse. So there's three aspects of why these instructions would not have given the jury that conception. If there's anything in section 666 that potentially limits it to quid pro quo, it's the word corruptly. That would be the key word. Well, the district court judge didn't just say corruptly and leave it undefined. She specifically defined that terms in the instructions and she defined it broadly, and this is at Record of Appendix 4152, she defined it broadly to require simply an unlawful purpose. And so any unlawful purpose would make it corrupt. And most problematically of all, and this is exactly what the government argued in its rebuttal in closing argument, is as long as the campaign contributions to Davis were unlawful under local law, that would have been enough to make them unlawful gratuities and therefore corrupt. And that can't be right if what corruptly really means is quid pro quo. So if this were a case where she defined corruptly to require quid pro quo, I mean, I probably wouldn't be here making this argument, but she defined corruptly broadly to cover anything unlawful. But it doesn't stop there. As I said, and the government really didn't get into this, and I'm not sure why, because I don't think they have a coherent answer to the lack of a McCormick instruction. But on that point, and this is at Record of Appendix 4152, the district court told the jury, quote, the agreement need not be express or explicit. So they're told that there doesn't need to be an explicit or express agreement, which is problematic under McCormick, but also sort of suggests to them there's no quid pro quo requirement. And then the third piece is, and I think this is critical contextually if you're trying to figure out what the jury was actually doing, on the Travel Act count, the one count that the jury acquitted Mr. Hamilton on, that picks up the Texas statute for bribery. And on that, the jury is told the following, and this is on Record of Appendix 4155, quote, the statute requires a direct and intended exchange of the benefit for the recipient's action, not merely a gratuity, period, end of quote. So on the one statute that's not 666 that the jury's told about, they're specifically told there needs to be an exchange, quid pro quo, and a mere gratuity won't do it. Now, that's obviously where they acquitted. Now, the government's only theory in response to that as well, we know from the jury note that what we're really concerned about is that there wasn't anything unlawful about Mr. Hamilton's first call to Mr. Carraway, and that gets into the entrapment issue, which I want to go to next, but I want to say one more thing about this issue about 666 and its scope. So my friend on the other side says, well, you know, there are other things in 666 that limit it. Well, if you put together all the government's position, there's essentially nothing in 666 that limits it. Any federal assistance is good enough, $10,000, every municipality in the country gets at least $10,000, the quo has to be worth $5,000, $5,000 doesn't go as far as it used to. The 666 really does cover the waterfront under their view. And then the other thing he tells you is, well, some of the other cases, they weren't nearly this bad. Governor McDonald got a Rolex, a Rolex. If that's not sort of the mother of all gratuities, I don't know what is. And this is the last point I'll make about this. The other reason you can't say there's harmless error in the context is because if what you need is a quid pro quo, then the jury would have had to find a quo. If all you need is a quid, well, then the jury's role here is very simple, they're done in a minute, and obviously a Rolex would be a quid, almost anything would be a quid. So you just can't say, well, this is good enough for sort of government work, it just doesn't work. Now let me move to entrapment. On entrapment, I do think that first call that Hamilton makes before the meeting the next day is worth looking at. I'm sorry, it says my time up. I'll stop if I should. Yeah, I'll just finish this point. He gets through that whole call and there's no talk about money, exchanging hands or anything. That's the call he wanted to make. And not only is that call innocuous, and this is the last point I'll make, it's constitutionally protected. He is petitioning his government to get something on the agenda. And so it's only after they have the meeting and he's told about mama and her health problems and all of that, that the possibility of sort of paying to petition the government even comes up. And so I think that's why an entrapment instruction is. I have a question about, back to the quid pro quo, the second point you made. You were talking about how they said it need not be express or explicit. You know, they could. Yep. And why would that matter whether or not it was, because it would seem that you could have quid pro quo through just parallel dancing, you know, like we know from other contexts, you know, where you just, you're doing this the same time and so you don't actually need explicit. Go ahead. Can you help me with that? Sure. I think that particular instruction was important for two reasons. One is just, if they're trying to say that these instructions actually required a quid pro quo when they didn't, that just seems to be one more element as to why that's not what any reasonable jury would have inferred. And don't forget also that Judge Lynn herself, after she gave these instructions, said she thinks they would have covered a gratuity. So I think it's relevant to that sort of, like, harmless error argument the government's made. But the other reason is, I totally get, like, the point, and the Court has made this, like in the Hobbs Act context, that, you know, the agreement doesn't have to be expressed in the sense of being, like, written down on a piece of paper or something, and you can have this kind of parallel dancing. But what the Court has said in McCormick, and they've never backed away from it, is if one of the quids is a campaign contribution, then in that context, it at least has to, the agreement at least has to be explicit. There has to be something more. So maybe if, you know, we just have two sophisticated people and they're sort of dancing around the express quid pro quo in the context where the quid is a Rolex, that's fine, you still go to federal prison. But if the quid is campaign contributions, which are money to a public official that's constitutionally protected, in that context, to be more protective of the First Amendment values, you do need to give an instruction that the quid pro quo has to be explicit. And, yeah. Okay, thank you, Your Honor. Thank you, counsel on both sides. We appreciate the helpful arguments today. The case is submitted.